## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SISVEL INTERNATIONAL S.A., 3G LICENSING S.A., and SISVEL S.p.A., | |
| Plaintiffs, | C.A. No. 20-00649-MN |
| v. | **JURY TRIAL DEMANDED** |
| CRADLEPOINT, INC. | |
| Defendant. | |

**DEFENDANT CRADLEPOINT'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS COUNTS I, II, IV, VII, AND IX PURSUANT TO FED. R. CIV. P. 12(b)(6)**

OF COUNSEL:

Amanda Tessar
Roderick O'Dorisio
PERKINS COIE LLP
1900 Sixteenth Street, Suite 1400
Denver, CO 80202-5255
Telephone: 303.291.2300
ATessar@perkinscoie.com
RODorisio@perkinscoie.com

Daniel T. Keese
PERKINS COIE LLP
1120 NW Couch Street, 10th Floor
Portland, OR 97209-4128
Telephone: 503.727.2000
DKeese@perkinscoie.com

Kelly E. Farnan (#4395)
Valerie A. Caras (#6608)
Richards, Layton & Finger, P.A.
920 North King St.
Wilmington, DE 19801
Telephone: 302.651.7705
farnan@rlf.com
caras@rlf.com

*Attorneys for Defendant Cradlepoint, Inc.*

# TABLE OF CONTENTS

**Page**

I.     Introduction And Procedural History................................................................. 1

II.    Summary Of Arguments For Dismissal.............................................................. 2

III.   Factual Background And Allegations Of Complaint.......................................... 3

IV.    Legal Standards.................................................................................................. 6

    A.     Rule 12(b)(6) Motions ............................................................................. 6

    B.     Dismissal With Prejudice......................................................................... 7

V.     Argument ............................................................................................................ 8

    A.     Sisvel's Allegations Ignore The "Display" And "Keypad" Requirements
        For The '388 Patent Claim 33...................................................................... 8

        1.     Claim 33 Recites A Device With A Display And A Keypad ................... 8

        2.     Sisvel Does Not Allege That The Accused Cradlepoint Products
            Have A Display Or A Keypad ................................................................. 10

    B.     The Asserted '070, '383, and '279 Patents And '388 Patent Claim 1 All
        Require User Equipment, Which The Cradlepoint Products Are Not ................. 11

        1.     The '383 Patent Asserted Claims All Recite A User Equipment
            Device ...................................................................................................... 12

        2.     The '279 Patent Asserted Claims All Recite A User Equipment ........... 13

        3.     The '070 Patent Asserted Claims All Recite A User Equipment ........... 14

        4.     Claim 1 Of The '388 Patent Requires The Equivalent Of A User
            Equipment .............................................................................................. 15

        5.     Sisvel's Complaint And The Attached Charts Ignore The User
            Equipment Requirements Of The '383, '279, '070, And '388
            Patents ................................................................................................... 16

    C.     The '653 Patent Recites A "Mobile Station," But Sisvel Does Not Allege
        That Cradlepoint's Network Routers And Gateways Can Meet This
        Limitation Either ......................................................................................... 17

        1.     The Asserted '653 Claims Require A "Mobile Station"......................... 17

        2.     Sisvel Does Not Allege The Cradlepoint Products Are A Mobile
            Station .................................................................................................... 18

    D.     The Court Should Dismiss Counts I, II, IV, VII, And IX With Prejudice.......... 19

VI.    Conclusion ...................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

C<small>ASES</small>

*AgroFresh Inc. v. Essentiv LLC*,
 No. 16-662-MN, 2019 WL 350620 (D. Del. Jan. 29, 2019)......................................................7

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)..............................................................................................6, 8, 17

*Atlas IP, LLC v. Exelon Corp.*,
 189 F. Supp. 3d 768 (N.D. Ill. 2016) ............................................................................8, 20

*Bell Atlantic v. Twombly*,
 550 U.S. 544 (2007)..................................................................................................8, 17

*Burtch v. Milberg Factors, Inc.*,
 662 F.3d 212 (3d Cir. 2011)..............................................................................................6

*DermaFocus LLC v. Ulthera, Inc.*,
 201 F. Supp. 3d 465 (D. Del. 2016) ...................................................................................7

*Dodots Licensing Sol'ns LLC v. Lenovo Holding Co., Inc.*,
 No. 18-098-MN, 2018 WL 6629709 (D. Del. Dec. 19, 2018)..................................................7

*Fowler v. UPMC Shadyside*,
 578 F.3d 203 (3d Cir. 2009)..............................................................................................6

*In re Burlington Coat Factory Sec. Litig.*,
 114 F.3d 1410 (3d Cir. 1997).................................................................................7, 13, 20

*Modern Telecom Sys. LLC v. TCL Corp.*,
 No. 17-583-LPS-CJB, 2017 WL 6524526 (D. Del. Dec. 21, 2017)..........................................7

*North Star Innovations, Inc. v. Micron Tech., Inc.*,
 No. 17-506-LPS-CJB, 2017 WL 5501489 (D. Del. Nov. 16, 2017) ..................................8, 10

*Ruby Sands LLC v. Am. Nat'l Bank of Tex.*,
 No. 2:15-cv-1955-JRG, 2016 WL 3542430 (E.D. Tex. Jun. 28, 2016)...............................8, 20

*SIPCO, LLC v. Streetwise, Inc.*,
 230 F. Supp. 3d 351 (D. Del. 2017).....................................................................................7

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

OTHER AUTHORITIES

Fed. R. Civ. P. 8 ................................................................................................................6

Fed. R. Civ. P. 12 ....................................................................................................2, 6, 7

Fed. R. Civ. P. 15 ...................................................................................................7, 20

## I.     Introduction and Procedural History

This is the second lawsuit filed by Sisvel International S.A. and its affiliates (collectively, "Sisvel") against Cradlepoint, Inc. ("Cradlepoint").  It also marks the second time that Sisvel has wrongly asserted patent claims against Cradlepoint that require elements, such as a display, a user equipment, or a mobile station, that Cradlepoint's accused products unequivocally do ***not*** have.  This is not a subtle or complex point, nor is it one that requires claim construction: a basic visual inspection reveals that none of Cradlepoint's products have these elements.

In its first suit against Cradlepoint, Sisvel asserted twelve patents, six of which required a display (the "Display Patents").  Cradlepoint asked Sisvel to drop the Display Patents, but Sisvel refused.  Cradlepoint was therefore forced to move to dismiss.  The Court both granted that motion ***and***—in recognition of the merit of the Display Patent arguments—admonished:

> I think some of the arguments that [co-defendant] VeriFone makes in its motion [for sanctions] and some of the arguments ***about the display*** that I've heard here today are not frivolous, so I would say that if plaintiff decides to go back and amend, you need to ensure that you have grounds for infringement, and you need to ensure that your complaint makes those grounds for infringement clear.

Feb. 7, 2020 Hrg. Tr. at 54 (emphasis added); *see also id.* at 35-37 ("[S]ome of the asserted patents require the presence or use of a display, but several of the accused instrumentalities do not at least obviously have displays, screen[s], monitors or any other feature that may constitute a display …").  Faced with this guidance, Sisvel then dropped the Display Patents from the first case against Cradlepoint.  D.I. 26-1 (D. Del. No. 19-cv-01142) (dropping claims; *see* redlines).

Despite this history, Sisvel now does the ***exact same thing again*** in this second case.  Cradlepoint sells (and Sisvel accuses) routers and gateway products.  But Sisvel now asserts nine new patents, five of which unambiguously require a display, user equipment, or mobile station (*e.g.*, a cell phone).  D.I. 1.  Cradlepoint does ***not*** sell those types of products.  Sisvel's complaint and attached claim charts do not shed any light on why Sisvel contends otherwise.

1

## II.      Summary Of Arguments For Dismissal

Cradlepoint respectfully moves to dismiss with prejudice all asserted claims of five of the newly-asserted patents[1] pursuant to Fed. R. Civ. P. 12(b)(6) for the following reasons:

1)      Claim 33 of U.S. Patent 7,580,388 ("the '388 patent") expressly requires a "display," just like the Display Patents that were dismissed in the first case.  Neither Sisvel's complaint nor the attached chart for this patent allege any facts, let alone *specific* facts, plausibly showing that Cradlepoint's products have a display (or a keypad either, which is also a required element).  Nor could Sisvel plausibly make such an allegation.

2)      Every asserted claim of U.S. Patent Nos. 7,979,070 ("the '070 patent"), 8,600,383 ("the '383 patent"), and 8,971,279 ("the '279 patent"), and the other asserted claim of the '388 patent (claim 1), requires a "user equipment" device or the equivalent.  But Sisvel's complaint and charts do not attempt to identify the recited "user equipment" or support for the proposition that the accused network routers and gateways are such devices.  To the contrary, a "user equipment" is a device used directly by an end-user to communicate (*e.g.*, make calls), such as a cell phone.  Cradlepoint's accused devices—routers and gateways—are not "user equipment."

3)      U.S. Patent No. 7,215,653 ("the '653 patent") similarly requires a "mobile station."  "Mobile station" is another industry term for a "user equipment," *i.e.*, a device used directly by an end-user to communicate.  ("Mobile station" was used in the older standards, but was superseded by the term "user equipment" in the 3G and the 4G LTE standards against which Sisvel asserts the patents now.)  Sisvel's complaint and attached chart unsurprisingly fail to explain why Sisvel believes that Cradlepoint's accused products are mobile stations or include

---

[1]    Sisvel asserts claims 1 and 33 of the '388 patent; claims 1, 2 and 5 of the '070 patent; claims 1, 9, 17, 25, 49, 58, 66, 74, 82, and 90 of the '383 patent; claims 1 and 11 of the '279 patent; and claims 34 and 37 of the '653 patent.

the necessary elements that would make them a "mobile station" (including, for example, voice capabilities and a display).

Sisvel's complaint and charts entirely ignore these issues.  Given the history, the Court's admonishment the first time around, and the fact that there is no way to amend to plausibly assert infringement of the '388, '070, '383, '279, and '653 patents by router and gateway products, Cradlepoint asks the Court to dismiss with prejudice Counts I, II, IV, VII, and IX.

### III.    Factual Background And Allegations Of Complaint

Sisvel and 3G Licensing are Luxembourger non-practicing entities, and Sisvel S.p.A. is an Italian non-practicing entity.  In the summer of 2019, Sisvel and 3G Licensing filed eight patent infringement suits across two districts, asserting twelve United States patents in each suit.[2]

Cradlepoint moved to dismiss for multiple reasons, including because the six Display Patents could have no reasonable application to any of Cradlepoint's accused products, none of which have displays.  *See* D.I. 16, at 3-4 ("Six of the twelve asserted patents, *i.e.*, each of the Display Patents, unequivocally requires a 'display.'  Even the most basic review of information about Cradlepoint's accused products makes immediately clear that none of them have a display or anything that could be argued to be a display….").  Some of the other defendants filed similar motions, although this issue was not so sharply focused for them because some or all had at least some accused products that, at least arguably, might have displays.

The Court was receptive to Cradlepoint's argument that Sisvel was required to explain where displays could be found in Cradlepoint's accused products, as discussed above.  Although

---

[2]    D. Del. Nos. 19-1140 (AnyDATA), -1141 (Blu Products), -1142 (Cradlepoint), -1143 (Honeywell), -1144 (Verifone), -1145 (Xirgo), -1247 (Dell); N.D. Tex. No. 3:19-cv-1694 (ZTE).  The Blu Products case was transferred to the Southern District of Florida (D.I. 25). Sisvel also filed suit against Tesla in Delaware in December (D. Del. No. 19-2288).

the Court refused requests for sanctions (made by Verifone) and to make its dismissals *with prejudice* (made by Cradlepoint, Verifone, and Honeywell), the Court dismissed Sisvel's claims and expressed skepticism as to Sisvel's approach.  For instance, the Court noted to Sisvel that, for the Display Patents, the Court was "not sure how you can contend that what you say in your complaint puts [Cradlepoint] on notice of what they are even looking at," given that "Cradlepoint says I don't even sell a product with the display…."  Feb. 7, 2020 Hrg. Tr. at 27-28.  The Court also admonished Sisvel that if it was going to include the Display Patents in an amended complaint that Sisvel needed "to ensure you have grounds for infringement, and you need to ensure that your complaint makes those grounds for infringement clear."  *Id.* at 54.

When the time came for Sisvel to file its amended complaint in the first case in March, it heeded the Court's warning and dropped the Display Patents against Cradlepoint entirely.  *See* D.I. 26-1 (redline showing deletion of claims based on Display Patents).

But then, just two months later, Sisvel started a second wave in its cellular campaign, filing twelve new cases across three districts[3] and asserting nine new patents that had not been part of the first-round cases.  Just as in the first set of cases, Sisvel asserts these patents against a plethora of different products—cell phones, laptops, tablets, and other types of electronics, as well as the accused network routers and gateways sold by Cradlepoint:[4]

---

[3]   D. Del. Nos. 20-649 (Cradlepoint), -651 (Dell), -652 (Honeywell), -653 (OnePlus), -654 (TCL, involving eight of the nine new patents), -655 (Tesla), -656 (VeriFone), -658 (Wiko SAS), -659 (Xirgo); N.D. Tex. No. 3:20-cv-1289 (ZTE); S.D. Fla. No. 20-cv-22050 (Blu Products, involving three of the nine new patents), -22041 (HMD), -22054 (Noetic).

[4]   *See, e.g.*, https://cradlepoint.com/products/arc-cba850 (ARC CBA850), https://cradlepoint.com/products/aer2200 (AER2200), https://cradlepoint.com/products/aer-1600 (AER1600 Series), https://cradlepoint.com/products/cor-ibr600b-series (CORIBR600B), https://cradlepoint.com/products/cor-ibr600c-series (COR IBR600C), https://cradlepoint.com/products/cor-ibr1700 (COR IBR1700-600M and COR IBR1700-1200M), and https://cradlepoint.com/products/cor-ibr900-series (IBR900 Series).

 

(Exemplary accused Cradlepoint products pictured above.)

Routers and gateways are used to connect local end-user devices (which can include laptops, cell phones, and other user devices) to a network. They act as a connectivity link between user devices and networks; they are not themselves end-user devices. Although the Cradlepoint products can be moved on occasion, routers and gateways are typically installed and remain in place for extended time; they are not "mobile" the same way that a cell phone or other end-user devices are, and end users do not speak into these devices to communicate with others.

Despite the significant differences between the products accused in the various cases, Sisvel's allegations against each defendant, including Cradlepoint, are materially identical and fail to address key differences between the products (or even the different product categories). The second-round complaints list the accused products only once in a preliminary definition and then regurgitate the same conclusory and threadbare allegations of direct and indirect infringement for each count against each defendant. *Compare, e.g.*, Complaint, D.I. 1, at ¶¶ 34-59, 72-83, 108-119, and 132-143, to the Complaint against Wiko (a cell phone company), No. 20-658, D.I. 1, at ¶¶ 31-56, 69-80, 105-116, and 129-140. Each complaint also cites to attached claim charts, but the charts do not provide any individualized analysis or explain whether and how the accused products are alleged to include, for example, a display, user equipment, and/or a mobile station, as recited by the asserted claims of the '388, '070, '383, '279, and '653 patents.

After being served with the complaint, Cradlepoint tried to resolve the issues raised in this motion. Specifically, Cradlepoint pointed out that the '388 patent claim requires a display; that the '070, '383, and '279 patents require user equipment; and that the '653 patent requires a

mobile station.  Cradlepoint asked Sisvel to withdraw its allegations for those patents, but Sisvel

refused.  Sisvel claimed that—even though it did not take the position that Cradlepoint's accused

products have a display or keypad (or any other user equipment components or functionality)—it

is "implicit" that "a keypad and display are … required to use the [Cradlepoint] products."

Sisvel did not specifically address the user equipment and mobile station issues in its emails.

This motion is therefore opposed.

## IV.    Legal Standards

### A.    Rule 12(b)(6) Motions

A motion to dismiss under Rule 12(b)(6) is evaluated with Rule 8(a)(2), which requires

that a claim for relief contain "a short and plain statement of the claim showing that the pleader

is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A complaint must contain more than "labels and

conclusions," and "a formulaic recitation of the elements of a cause of action will not do."

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Bell Atlantic v. Twombly*,

550 U.S. 544, 555 (2007)).  Consequently, to survive a Rule 12(b)(6) motion, a complaint must

allege "enough facts to state a claim to relief that is plausible on its face."  *Burch v. Milberg*

*Factors, Inc.*, 662 F.3d 212, 220 (3d Cir. 2011) (quoting *Twombly*, 550 U.S. at 570).

The plausibility standard "asks for more than a sheer possibility that a defendant has

acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim has "facial plausibility"

only when it "allows the court to draw the reasonable inference that the defendant is liable for

the misconduct alleged."  *Id.*  If a complaint does not contain "***sufficient factual matter***,

accepted as true, to 'state a claim to relief that is plausible on its face,'" dismissal of the

complaint under Rule 12(b)(6) is appropriate.  *Id.* (quoting *Twombly*, 550 U.S. at 570) (emphasis

added); *see also Fowler*, 578 F.3d at 210.

To state a plausible claim for infringement, judges in this District require patent infringement to be alleged with specificity, with each element of the asserted claims addressed. *See DermaFocus LLC v. Ulthera, Inc.*, 201 F. Supp. 3d 465, 469 (D. Del. 2016). To plead sufficient factual matter, the complaint must specify which parts of the accused product infringe **and how they do so**. *Modern Telecom Sys. LLC v. TCL Corp.*, No. 17-583-LPS-CJB, 2017 WL 6524526, at *3 n.8 (D. Del. Dec. 21, 2017). Further, the Court is not required "to accept as true bald assertions, unsupported conclusions or unwarranted inferences." *AgroFresh Inc. v. Essentiv LLC*, No. 16-662-MN, 2019 WL 350620, at *1 (D. Del. Jan. 29, 2019). Indeed, "a court need not accept as true allegations that contradict matters subject to judicial notice or by exhibit, such as the claims and the patent specification." *Dodots Licensing Sol'ns LLC v. Lenovo Holding Co., Inc.*, No. 18-098-MN, 2018 WL 6629709, at *1 (D. Del. Dec. 19, 2018). Rather, a plaintiff is required to provide sufficient details to indicate what specific components of accused products allegedly violate each patent element. *See, e.g.*, *SIPCO, LLC v. Streetwise, Inc.*, 230 F. Supp. 3d 351, 353 (D. Del. 2017).

**B.      Dismissal With Prejudice**

Although the standards for permitting amendment to correct deficiencies after a Rule 12(b)(6) dismissal are liberal, amendment is not permitted in all circumstances, and some claims should be dismissed with prejudice. Specifically, courts do not allow amendment where such an amendment would be inequitable and/or futile.

For instance, where a plaintiff fails to plausibly plead that one of the claim limitations of an asserted patent is present in the accused product, or where they have conducted a blatantly insufficient pre-filing investigation, courts have dismissed with prejudice. *See, e.g.*, Fed. R. Civ. P. 15(a); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410,1434-35 (3d Cir. 1997) ("Among the grounds that could justify a denial of leave to amend are undue delay, bad faith,

dilatory motive, prejudice, and futility."); *Atlas IP, LLC v. Exelon Corp.*, 189 F. Supp. 3d 768, 779 (N.D. Ill. 2016) (dismissing with prejudice because infringement could not be plausibly pleaded unless an "unsustainable" claim construction was used); *Ruby Sands LLC v. Am. Nat'l Bank of Tex.*, No. 2:15-cv-1955-JRG, 2016 WL 3542430, at *4 (E.D. Tex. Jun. 28, 2016) (dismissing infringement claims with prejudice because plaintiff had improperly cut-and-pasted infringement allegations and not corrected error, showing carelessness).

## V.      Argument

Sisvel, just as in its first cases, makes substantially identical allegations across defendants. These allegations ignore key elements of the claims and fail to account for the fact that the accused Cradlepoint products, consisting of only routers and gateways, do not include the capabilities and hardware required by five of the asserted patents.

## A.      Sisvel's Allegations Ignore The "Display" And "Keypad" Requirements For The '388 Patent Claim 33

Sisvel's allegations in the complaint (D.I. 1, at ¶¶ 109-119) and the attached chart for the '388 patent (*id.* at ¶ 111; D.I. 1-21) are facially deficient. Under *Iqbal* and *Twombly*, a plaintiff asserting a claim of patent infringement must explain, with factual support, ***how*** the plaintiff alleges that the accused products infringe ***each*** limitation of the asserted claims. *North Star Innovations, Inc. v. Micron Tech., Inc.*, No. 17-506-LPS-CJB, 2017 WL 5501489, at *2 (D. Del. Nov. 16, 2017), report and recommendation adopted, D.I. 37 (Jan. 3, 2018). Sisvel's allegations fall far short of this standard.

### 1.      Claim 33 Recites A Device With A Display And A Keypad

Claim 33 of the '388 patent ***expressly*** recites a "mobile communication device" that must include both a display and a keypad for user input, among other elements:

> 33.   A mobile communication device for transmitting control information to a network, the mobile communication device comprising:

> an RF module configured to receive a first message …;
>
> an antenna configured to receive the first message …;
>
> **a keypad configured to input information from a user**;
>
> a storage unit configured to store information …;
>
> **a display configured to convey information to the user**; and …

D.I. 1-20, at 19:42-20:2 (emphases added).

Claim 33 is clear that the recited mobile communication device ***must*** include a display and a keypad for user input. The specification further requires that a mobile communication device must comprise a display and a keypad for user input. Figure 16 of the '388 patent depicts a block diagram of a mobile communication device, which requires, among other elements, both a display and a keypad, highlighted below:

**FIG. 16**



*Id.* at Fig. 16 (highlighting added). The corresponding description of Figure 16 also makes clear that a display is required, stating that "a block diagram of a mobile communication device 200 of the present invention is illustrated, for example a mobile phone for performing the methods of the present invention. The mobile communication device 200 includes … a display 215, a keypad 220, … and a microphone 250." *Id.* at 15:40-48; *see also, e.g.*, *id.* at 11:4-8.

9

2.      **Sisvel Does Not Allege That The Accused Cradlepoint Products Have A Display Or A Keypad**

Sisvel's allegations in the complaint and the attached chart for the '388 patent do not plead any facts showing that the accused products incorporate the required "mobile communication device," "mobile terminal," "display," or "keypad."  *See* D.I. 1-21.  Nor could it. Instead, Sisvel's allegations and chart focus solely on aspects of the 3G/UMTS standard, without any reference to the accused router and gateway products.  Sisvel's chart for claim 33 shows:



*E.g.*, D.I. 1-21, at 3-4 (highlighting added).

Despite the wordiness of Sisvel's chart, Sisvel entirely fails to articulate ***any*** facts suggesting that the accused products include a display and/or a keypad.  For this reason alone, claim 33 (one of two asserted claims in Count VII) should be dismissed.  *North Star Innovations,* 2017 WL 5501489, at *1.  (The other asserted claim of the '388 patent, claim 1, should also be dismissed for the reasons discussed below in Section IV.B.4.)

Sisvel's approach is particularly egregious here because ***none*** of the accused Cradlepoint products includes a display or can be reasonably argued to do so. *See supra*, n.4. Moreover, this same issue was litigated in the first Sisvel case, and Sisvel did not even attempt to argue then that the accused Cradlepoint products include a display. *See* D. Del. No. 19-1142, D.I. 21, at 5-6 (citing D.I. 20, at 6-7). The exact same products are now at issue here. *Compare* Complaint at ¶¶ 14-22 *with* D. Del. No. 19-1142, D.I. 8 (First Amended Complaint), at ¶ 9. The accused products still do not have a display. Nor do the accused products have a keypad.

If Sisvel has some unexpected argument as to why the Cradlepoint products meet this limitation, then the chart should have explained that so Cradlepoint could understand the basis for Sisvel's claim. But Sisvel did not do so; it just ignored this issue. The Court should dismiss claim 33 of Count VII.

## B.   The Asserted '070, '383, and '279 Patents And '388 Patent Claim 1 All Require User Equipment, Which The Cradlepoint Products Are Not

The complaint and attached charts are similarly devoid of facts that articulate a basis to allege that the accused products are or include the "user equipment (UE)" that is recited in the asserted claims of the '070 patent (Count I), the '383 patent (Count II), and the '279 patent (Count IX). *See* D.I. 1, at ¶¶ 35-46, 49-58, 133-142; D.I. 1-9; D.I. 1-11; D.I. 1-25. Claim 1 of the '388 patent similarly requires a "mobile terminal," such as "user equipment (UE)." D.I. 1 at ¶¶ 108-119; D.I. 1-21.

A "user equipment" or "UE" is a well-known term in the asserted cellular standards (and the industry). As is apparent from the term itself, UE is a device for use by a "user" (or "end user"), like you or me, to communicate. Mobile phones are a common example of a UE, as discussed more below, although the term can sometimes also encompass other devices with components necessary for end-user communication, like a keypad, keyboard, microphone,

touchscreen, and/or a display.   Sisvel has not pointed to anything in the accused router and gateway products that could constitute a UE; these are networking devices capable of communicating with a UE, but they are not themselves UEs.

### 1.      The '383 Patent Asserted Claims All Recite A User Equipment Device

Each asserted claim of the '383 patent recites a "user equipment device," shortened to "UE," either as an apparatus (claims 17, 25, 49, 58, 82, and 90) or in a claim to a method performed by such a device (claims 1, 9, 66, and 74).  *See* D.I. 1-10, at 10:59-16:33; D.I. 1-11. Claim 17, for example, recites a UE that can be used with two cellular technologies:

> 17.    ***A user equipment device (UE)*** configured to be operable with a first cellular Radio Access Technology (RAT) and a second cellular RAT, the UE comprising:
>
> a processor and memory, the ***UE*** being operable so that….

D.I. 1-10, at claim 17.  The other asserted claims similarly require a user equipment device that is capable of connecting to multiple cellular networks.

The '383 patent specifies that a "user equipment" or "(UE)" is an end-user device such as a mobile phone, laptop with wireless communication capability, and/or a PDA:

> In a typical cellular radio system, mobile user equipment (UE) communicates via a radio access radio network (RAN) to one or more core networks.  User equipment (UE) comprises various types of equipment such as mobile telephones (also known as cellular or cellphones), laptops with wireless communication capability, personal digital assistants (PDAs)….

D.I. 1-10, at 1:37-42; *see also id.* at 1:21-29 ('383 patent relates to "Mobile Stations (MS) and User Equipment (UE) which support at least two Radio Access Technologies….").  Figure 5 of the '383 patent provides "a block diagram illustrating a mobile device, which can act as a UE and co-operate with the apparatus and methods of Figs. 1-5."  *Id.* at 3:54-6.  Figure 5 shows that

this UE, unsurprisingly, includes a display, a keyboard, microphone for voice calls, etc. (highlighted below):



*Id.* at Fig. 5, 7:56-60.  The recited "user equipment device" clearly is not a router or a gateway.

The standards cited by Sisvel's charts are in accord that a UE is an end-user mobile device.  *See, e.g.*, Keese Decl. Exh. 1 (TS36.304, cited in D.I. 1-11), at 7, 12 (UE can make emergency calls and/or receive emergency messages); Exh. 2 (TS24.301, cited in D.I. 1-9), at 20 (describing UE's usage settings indicating voice and data preferences), 21 (protocols intended to facilitate UE mobility); Exh. 3 (TR21.904), at 8, 11, 13 (identifying "voice" and "emergency calls" as UE functionality).[5]

### 2. The '279 Patent Asserted Claims All Recite A User Equipment

The asserted claims of the '279 patent also recite a "User Equipment (UE)" either as part of a method performed by the UE (claim 1) or as part of an apparatus "used [] in a wireless mobile communication system" (claim 11).  D.I. 1-24, at claims 1 and 11; D.I. 1-25.  Specifically, claim 1 recites a method performed by a "User Equipment (UE)" in a wireless

---

5    Cradlepoint cites the standards relied on by Sisvel in the claim charts attached to its
     complaint.  *See, e.g.*, D.I. 1-9, 1-11, 1-15, 1-21, 1-25.  A document that is integral or
     explicitly relied on in the complaint may be considered in deciding a motion to dismiss.  *In re
     Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426.

mobile communication system that performs a method for deactivating a particular type of cellular transmission:

> 1.    … performing, by a ***User Equipment (UE)***, a SPS transmission at an interval of a subframe period configured by a radio resource control (RRC) signal;

D.I. 1-24.  Claim 11 similarly recites a UE device.  *Id.*

The '279 patent describes the "user equipment (UE)" as including both a display and a user input device, such as a keyboard, keypad, and/or a touchscreen, which would facilitate user input.  Fig. 20, which is pictured below, "is a block diagram illustrating constituent elements" of a UE device, including both a display and a user interface unit, such as a keypad or touchscreen:



*Id.* at Fig. 20 (color added), 6:31-32, 24:23-43 ("If the device 50 is a UE, the display unit 54 displays various information….  The user interface unit 55 may be constructed of a combination of well-known ***user interfaces*** such as a keypad, a touchscreen, and the like.") (emphasis added).

### 3.    The '070 Patent Asserted Claims All Recite A User Equipment

Asserted claims 1, 2, and 5 of the '070 patent similarly recite a "user equipment" that, like the user equipment devices in the '383 and '279 patents, is a user device for a mobile communication network.  *See, e.g.*, D.I. 1-8, at claims 1, 2, and 5.  Specifically, as recited in

14

exemplary claim 1 below, the asserted claims of the '070 patent recite a "user equipment" configured to perform an attach request procedure with a cellular network:

>    1.    An apparatus, comprising:
>
>>        a ***user equipment***, the user equipment being configured to:
>
>>        send an attach request to a network….

*Id.* (emphasis added); *see also* claim 5 ("a user equipment").  Dependent claim 2 specifies that the UE is a "mobile station."  *Id.*

Importantly, the asserted claims explicitly recite that the user equipment connects as a "radio bearer" to a network, *e.g.*, a wireless or cellular network, so the device itself can originate and receive communications.  *See, e.g.*, Fig. 1, 1:16-21 ("The present invention is directed to a method and device for attaching … a user equipment, to a wireless network so as to be able to originate or receive … a phone call, or data or message…."), 1:26-42, 2:42-58 (describing Figure 1 as depicting a wireless network with multiple mobile stations or user equipment(s) that connect to the GPRS wireless network system).  The "user equipment" of the '070 specification therefore (and unsurprisingly) is a mobile device for originating and/or receiving calls via a wireless network, *e.g.*, a cellular phone, and not a router or a gateway that does not allow an end-user to "originate or receive … a phone call, or data or message."

### 4.    Claim 1 Of The '388 Patent Requires The Equivalent Of A User Equipment

Claim 1 of the '388 patent specifies a "mobile terminal" device, which the specification explains is a "user equipment (UE)."  *E.g.*, D.I. 1-20, at 1:19-24 ("for example[,] user equipment"), 12:27-38 (same), 8:64-9:2 ("a mobile"), 16:40-60 ("Although the present invention is described in the context of mobile communication, the present invention may also be used in any wireless communication systems using mobile devices, such as PDAs and laptop

15

computers….").  Claim 1, like the '070, '383, and '279 patents, thus requires a user equipment intended for the end user, such as cellular phones, PDAs, and/or laptop devices.

> **5.    Sisvel's Complaint And The Attached Charts Ignore The User Equipment Requirements Of The '383, '279, '070, And '388 Patents**

Every one of the asserted claims in Counts I, II, VII, and IX recites a user equipment or the equivalent.  Sisvel's complaint and the attached charts *entirely ignore these requirements*.

In short, Sisvel supplies no explanation at all as to what devices (or aspects of the accused Cradlepoint products) Sisvel contends are "user equipment" devices.  *See, e.g.*, D.I. 1, at ¶¶ 34-59, 132-143; D.I. 1-9; D.I. 1-11; D.I. 1-25.  For instance, the only place "user equipment" appears in the complaint is where the title of the '383 patent is quoted.  *See* D.I. 1, at ¶ 49.

The attached claim charts are no more illuminating.  They focus on generic citations to various 4G and/or 3G specifications, but:  (a) do not identify what constitutes the "user equipment"; and (b) contain no analysis of any sort specific to any Cradlepoint products.  *See* D.I. 1-9, 1-11, 1-21, 1-25.  The charts (highlighted screenshots below) completely ignore the "user equipment":





*See, e.g.*, D.I. 1-9, at 1; D.I. 1-11, at 1; D.I. 1-25, at 1; D.I. 1-21, at 1.

The only purported "user equipment" analysis that Sisvel supplies for any of these four patents is in the chart for dependent claim 2 of the '070 patent, where Sisvel states: "[o]n information and belief, the user equipment (UE) is a mobile station."  D.I. 1-9, at 4.  But this is circular and still fails to tether either term to Cradlepoint's accused products because a "mobile station" is simply a well-known industry predecessor term for "user equipment," *i.e.*, cell phone.

Generic citations to the LTE standard do not provide a plausible basis to allege infringement of claims requiring "user equipment" hardware.  Sisvel's failure to supply ***any*** analysis regarding the "user equipment" leaves Cradlepoint unable to understand what is accused or why routers and gateways could be subject to infringement allegations.  If Sisvel has some unexpected argument (based on claim construction or otherwise) that it contends would plausibly convert the accused network gateway and router products into a "user equipment," *e.g.*, a laptop, PDA, or cell phone (with all of their attendant displays and other hardware), then Sisvel should have stated its allegations.  Sisvel's failure to do so falls far short of the pleading standards set forth by *Iqbal* and *Twombly*.  Counts I, II, VII (claim 1), and IX should be dismissed.

## C.     The '653 Patent Recites A "Mobile Station," But Sisvel Does Not Allege That Cradlepoint's Network Routers And Gateways Can Meet This Limitation Either

Sisvel's Count IV based on the '653 patent should likewise be dismissed because the Cradlepoint accused products are not alleged to be, and/or to have, the "mobile station apparatus" recited by asserted claims 34 and 37.  *See* D.I. 1-14, at claims 34 and 37; D.I. 1-15.

### 1.     The Asserted '653 Claims Require A "Mobile Station"

Claim 34 recites a "mobile station."  *See* D.I. 1-14, at claim 34.  Claim 37 likewise recites a method of controlling data transmission rate in "a mobile station apparatus."  *Id.* at claim 37.

The '653 patent is clear that that the "mobile station" and "mobile station apparatus" recited in the asserted claims is a mobile phone with voice capability and hardware elements,

such as a display.  The specification, for instance, equates a "mobile station" with a mobile

phone and distinguishes it even from a laptop, a PDA, and other end-user devices:

> An access terminal (AT) can be in many forms, including a mobile
> station (*e.g.*, mobile phone), a mobile terminal (*e.g.*, a laptop
> computer), and other devices (*e.g.*, a personal digital assistant:
> PDA) having the combined functionality of both a mobile station
> and a mobile terminal, or having other terminal capabilities….

D.I. 1-14, at 1:21-26.  This is consistent with use of this term in the GSM predecessor to the 3G

standard on which Sisvel bases its infringement theory; the 3G standard switched to the term

"user equipment."  Keese Decl., Exh. 4 (TS24.002), at 7 ("The term 'mobile station' ( MS ) in

the present document is synonymous with the term 'user equipment' (UE ) in 3G terminology as

defined in 3GPP TR 21.905[].").  "Mobile stations," like "user equipment" and mobile devices

generally, are all end-user devices used for communication.  Mobile phones (cellular phones)

include both voice capabilities and necessary hardware elements, *e.g.*, a display.  *See* D.I. 1-14,

at 1:29-33; 2:61-3:6 ("[T]ransfer of digital data packets differs from the transfer of digital voice

information.  Full duplex (simultaneous two-way) voice communication patterns imply that the

data, transferred between the base station and a particular mobile station are real-time and

substantially equal in bandwidth").

### 2.      Sisvel Does Not Allege The Cradlepoint Products Are A Mobile Station

Just as with the patents discussed above, Cradlepoint's complaint (D.I. 1, at ¶¶ 72-83)

and the attached chart for the '653 patent (D.I. 1-15) both ignore key elements of the claim and

the accused products, analyzing only generic aspects of standards (here 3G/UMTS).  The

complaint recites only conclusions with no substantive analysis.  D.I. 1, at ¶¶ 72-83.  The

accompanying chart, excerpted below, cites the UMTS standard, but it does not identify elements

of the Cradlepoint products that are or include a "mobile station apparatus":



D.I. 1-15, at 1-2 (highlighting added).  The chart takes no position as to whether a mobile station apparatus could be a router or gateway, much less explain the basis for such an outlandish claim.

The deficiencies are especially troubling here because the '653 patent makes clear that a mobile station is a device with voice capabilities and hardware that the Cradlepoint products do not have.  If Sisvel had a plausible argument the accused routers and gateways are somehow a "mobile station," including based on a novel claim construction, then it was incumbent on Sisvel to identify and explain its argument.  The existing Count IV allegations are deficient and should be dismissed.

## D.    The Court Should Dismiss Counts I, II, IV, VII, And IX With Prejudice

Sisvel's inadequate pleading neglects key elements of the asserted patents and leaves Cradlepoint and the Court to speculate regarding how any of Cradlepoint's products allegedly infringe the asserted claims of each of the patents.  Under well-established pleading standards, the missing information is necessary to state a plausible claim, which Sisvel failed to do.

Sisvel should not be permitted to amend in an attempt to rectify these defects for multiple reasons.  First, it is readily apparent that Sisvel made no effort to investigate or to tailor its claims to the specific accused products.  Its allegations are substantially identical across cases, despite the fact that Cradlepoint's products are different than the other defendants' in ways that are material to the specific patents and claims that Sisvel has chosen to assert.

Second, Sisvel's failure to address its pleading defects, even after Cradlepoint called them to Sisvel's attention, is particularly egregious because of what happened in the earlier cases. Instead of heeding the Court's cautions, it appears that Sisvel ***again*** merely copied and pasted their new infringement allegations across multiple cases, including this one, without any individualized analysis or investigation and without evaluating whether the accused products include basic elements like a display and a keyboard or are even a "user equipment" or "mobile station" used to send or receive calls. In such circumstances, courts have dismissed and should dismiss with prejudice. *See, e.g.*, *Atlas IP, LLC v. Exelon Corp.*, 189 F. Supp. 3d 768, 779 (N.D. Ill. 2016) (plaintiff failed to adequately plead infringement, indicating plaintiff could not do so); *Ruby Sands LLC v. Am. Nat'l Bank of Tex.*, 2016 WL 3542430, at *4 (cut-and-pasted infringement allegations and failure to correct error justified dismissal with prejudice).

Third, any amendment would be futile. The accused products simply do not include the required display, user equipment, or mobile station. That will not change if Sisvel is allowed to amend, even if Sisvel stretches far to find some creative claim construction. Futility is grounds for dismissal without leave to amend. *See, e.g.*, Fed. R. Civ. Pro. 15(a); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1434-35 (futility is sufficient to deny leave to amend).

## VI.    Conclusion

For the reasons set forth above, Cradlepoint respectfully requests that the Court dismiss Counts I, II, IV, VII, and IX with prejudice.

OF COUNSEL

Amanda Tessar
Roderick O'Dorisio
PERKINS COIE LLP
1900 Sixteenth Street, Suite 1400
Denver, CO 80202-5255
Telephone: 303.291.2300
ATessar@perkinscoie.com
RODorisio@perkinscoie.com

Daniel T. Keese
PERKINS COIE LLP
1120 NW Couch Street, 10th Floor
Portland, OR 97209-4128
Telephone: 503.727.2000
DKeese@perkinscoie.com


Dated:  August 31, 2020

/s/ Kelly E. Farnan
Kelly E. Farnan (#4395)
Valerie A. Caras (#6608)
Richards, Layton & Finger, P.A.
920 North King St.
Wilmington, DE 19801
Telephone: 302.651.7705
farnan@rlf.com
caras@rlf.com

*Attorneys for Defendant Cradlepoint, Inc.*